Tilghman C. J.
This was an action on a policy of insurance on goods valued at 3000 dollars, the cargo of the ship Charlotta, on a voyage from Liverpool to Philadelphia, warranted American property. Warder, the defendant below, who is plaintiff in error, underwrote the policy for 500 dollars. The case comes before us on a bill of exceptions, and there are three questions for decision. 1st. Whether the plaintiffs had an insurable interest in the goods. 2. Whether there was a double insurance. 3d. Whether the warranty of the property being American was complied with.
[The Chief Justice then stated the material facts.]
I consider M’Clure and Robertson as no more than the agents of Logan, Lenox and Co., and bound to obey their instructions in all respects. Consequently the property was not vested in M’Clure and Robertson, but remained in Logan, Lenox.and Co. Captain M’Call, by signing the bill of lading, acknowledged that the property was not in the plaintiffs. Indeed the plaintiffs had no right to the property either by law or equity. Logan, Lenox and Co. were under no obligation to advance their money to purchase a cargo for the plaintiffs, who were perfect strangers to them. They had a right to retain the property in themselves, until they were fully reimbursed; and that they intended to retain it, they explicitly declared in their letters, both to their agents and to the plaintiffs. Then what kind of interest had the plaintiffs? No other than what arose from the order of Logan, Lenox and Co. to deliver them the cargo on payment of a certain sum, which exceeded the cost of the cargo with all charges. Now if there had been occasion to abandon to the underwriters in Philadelphia, what would the plaintiffs have had it in their power to abandon ? Nothing at all, because *^)e abandonment made by Logan, Lenox and Co. to the English underwriters, would have carried every thing. The cases cited by the plaintiffs’ counsel, do not come up to the point. The strongest of these cases are an insurance on profits, an insurance by an agent of prizes, before the king had granted the property to the captors, and an insurance by A, who having a debt due to him from B, goods were consigned by B to his own agent C, with orders to deliver them to A in payment of the debt. As to the insurance on profits, it is to be remarked, that it was made for *489 the use of the person who owned the goods, and had them in possession, and who therefore might abandon both the goods and the profits expected to he made out of them. This was the case of Grant v. Parkinson; and it is material, that in that case, the insurance was not generally on goods, but it was specially expressed that' the goods were valued at 1000Í., “ being the profits expected to arise on the cargo of the above ship in the event of her safe arrival at Quebec.” (See this case cited in 1 Condy’s Marsh. 97.) So an interest of a consignee in his commissions is insurable; but the special nature of the interest must be mentioned. In the case of the prize agent, the property in strict law was in the king, but the custom of granting all prizes taken from an enemy to the officers and men of the capturing ship, is so constant and uniform, that the court thought it no unwarrantable departure from rigid law, to consider it as an insurable interest. It is a case sui generis, from which no general inference is to be drawn. In the case of goods consigned to his own agent by the debtor of A, with orders to deliver them to A in payment of the debt, the consideration might be said to be paid, on A’s making his election to take the goods. A’s effecting an insurance, did, at least between him and the underwriters, amount to an election; and he would not have been permitted afterwards to demand a return of premium from them, on the principle of his having no property. But the case before us is very different. When the plaintiffs effected the insurance, they supposed that their captain had funds, with which he would be able to purchase a cargo in England. But in this they were mistaken. The cargo was not purchased with their funds, or shipped as their property, nor could any election *of theirs, cause an interest to be vested in them, until they had paid the whole cost and charges, and more. I do not think it necessary however to determine, whether, if the plaintiffs had known and fully explained to the underwriters the nature of their situation, the law would have permitted an insurance to be made- on their right to take the goods at a certain price, from which they expected to make a profit by the sale in this city; because I presume that the question before the jury, was whether plaintiffs had an interest insurable in the manner in which it was insured, and in that point of view, I am of opinion that they had not an insurable interest.
2. If the plaintiffs had not an insurable interest, it was because the property was vested in some other persons, and those persons were not Americans, consequently the warranty was broken. This possibility of property can never *490 be called property, within the fair construction of a warranty, which engaged that it should be bona fide American, so that it could not be condemned by the French, without a breach of the law of nations. It is perfectly immaterial, and useless to conjecture, whether the true nature of the transaction would have come to the knowledge of the French Court of Admiralty, in case of capture. We ought rather to suppose, that with that knowledge the court was called upon to decide. How could they separate this imperfect right claimed by American citizens, from the substantial property remaining in the English subjects who shipped the cargo? They would have been justified in condemning it. The very case, or rather a stronger one, has happened and been decided by one of the belligerents, the English. In the case of the Aurora, Lindberg master, 4 Rob. 181, Sir William Scott asked Mr. Lawrence, whether there-was not a case very lately, of goods sent by a merchant in Holland to A, a person in America, by order of B and for account of B, but with directions to A not to deliver them, unless satisfaction could be given for the payment, in which case the property was held not to be'divested out of the Dutch shipper, and condemned. Lawrence, against whom it bore hard, answered that the case had occurred, but the goods - not going to the hands of the purchaser, but to a third person, who Ir”§k'fc supposed to keep up the *possession of the shipper as an intermediate agent, it might be distinguished from that before the court. So in the case before us, the bill of lading being sent to the agent of the English merchants, the possession as well as the property continued in them. I am therefore of opinion that the warranty was broken.
3. Was there a double insurance? I think not. To constitute a double insurance, the property must be twice insured on the same risk, and for the benefit of the same person. If different persons claim different interests in the same subject, each may insure his own interest, and yet the insurance is not what the law esteems double.
The house of Logan, Lenox and Co. did not insure on account of the plaintiffs but on their own account. Therefore if the plaintiffs had a separate interest, there was no reason-why they might not insure it, and recover on their own account, although Logan, Lenox and Co. had received the invoice value of the goods from the English underwriters.
I am of opinion on the whole, that the judgment should be reversed, and a venire facias de novo awarded.
*491 Yeates J.
I fully admit the correctness of the general legal principles laid down in the charge to the jury in the District Court; they are faithfully extracted from the books. But I cannot bring myself to agree to the application of those principles to the special circumstances of the case before the Court.
The evidence is wholly written; there is no contrariety in it. The bill of lading, which is the usual proof of property on the shipment of goods, is dated September 4th 1806. It expresses that 100 tons of stowed salt, 12 tons 3 cwt. of coals, and 20 crates of earthenware, were shipped at Liverpool by Logan, Lenox and Co. on account of M’Clure and Robertson merchants in Philadelphia. The shippers insured the goods in London on their own account, and on the 18th of October 1806, they wrote as well to M’Clure and Robertson, as to the plaintiffs below, that the goods were to be delivered to the latter on no other terms than their paying 445i. 10's. 2d. sterling to the former. The vessel sailed two days afterwards, and not having been since heard of, must have foundered at sea. *It is evident to me, that the cargo was subject to the orders of Logan, Lenox & Co. It was purchased by them with their own funds, sailed at their sole risk, and in the event which has happened, if they had not provided against it by insurance, the loss must have fallen upon themselves. Whether the plaintiffs below would ever acquire any property in the goods so shipped, depended on three contingencies, the safe arrival of the goods, their election to take them, and their actual payment of the sum stipulated. All these events must have occurred, before the legal interest in the cargo, could have vested in Horton and Cummings. The only exclusive privilege which they had, was the permission granted to them to purchase the goods at the prime costs and charges: and I cannot possibly think that they had such a legal or equitable title in those goods as the law would recognize, and confer on them an insurable interest. The intention of Logan, Lenox and Co. to preserve the absolute property, in themselves, is evidence throughout the whole transaction, and cannot be mistaken ; although in one of the minor parts, in charging the plaintiffs below with 4i. 18s. for premium of insurance, they appear to have overshot the mark.
I agree with the District Court, that there has been no double insurance in this case, for the reasons detailed in the charge. But on the remaining point, I cannot concur.
The cargo of the Charlotta was warranted to be American property, to be proved here only. The court correctly told *492 the jury, that if the warranty had not been complied with, it was fatal to the claim of the assured, although the loss happened from an entirely different cause. This is the clear settled commercial law; whether the thing warranted was material or not, whether the breach of it proceeded from fraud, negligence, misinformation or any other cause, the consequence is the same. The contract is not binding, unless the warranty is complied with. 1 Condy’s Marsh. 348. The court says, that upon a disclosure of the whole facts, it is evident that there is mingled in the property a belligerent interest; but in the close of the charge it was submitted to the jury, whether the risk was increased thereby, and whether the insurance could have been effected for the same premium? It is a very evident proposition, that intermingling *neutral with belligerent property, increases the risk, and that such a circumstance is seized on with avidity in the prize courts. The warranty was falsified by blending belligerent with neutral property, in the light wherein the subject insured was viewed by the District Court, and the contract was no longer binding. It was therefore a material error to put the point of warranty to the jury on the quantum of risk or premium, which could have no effect on an established rule of insurance. On this ground the judgment in Dansdale v. Burd, 2 Binney 324, was reversed.
I am of opinion that the judgment of the District Court be reversed, and a venire facias de novo be awarded.
Brackenridge J.
I am clearly of opinion that the judgment should be reversed, because the warranty was not performed, and I incline to think there was no insurable interest.
Judgment reversed.